IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REACY H. HOBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 08 C 3713 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| JOHN E. POTTER, U.S. Postmaster ) | |
| General, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reacy H. Hobbs, an equipment mechanic for the U.S. Postal Service, has sued his employer, John E. Potter, the Postmaster General, for race, color and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants the motion.

**Local Rule 56.1**

Local Rule 56.1 sets forth the summary judgment filing. LR 56.1. The local rule requires the movant to file a supporting memorandum of law and a statement of material facts along with any affidavits and other materials. LR 56.1(a)(1). The local rule also requires the nonmovant to file a statement of facts that responds to each numbered paragraph of the movant's statement of facts with references to the record to support the nonmovant's denial of any fact statement. LR 56.1(b)(3)(A). Any facts in the movant's statement that are not properly denied by the nonmovant will be deemed admitted for the purposes of summary judgment. *Id.* It is important to note that defendant complied with Local Rule 56.2 and notified plaintiff of the requirements of a nonmovant under Local Rule 56.1 as well as the consequences of non-compliance with the Rule. Because of

the importance that Local Rule 56.1 serves with regards to organizing evidence and disputed facts, the U.S. Court of Appeals for the Seventh Circuit has consistently upheld a district court's requirement of strict compliance with the Rule. *F.T.C. v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005).

With these principles in mind, it is important to note that Hobbs has failed to comply with Local Rule 56.1. His statement of facts fails to respond to each of the numbered paragraphs in defendant's statement of facts in that it only responds directly to a few of defendant's fact statements. Further, Hobbs failed to submit any documentation or declarations along with his statement of facts and, as such, many of his assertions are unsupported and purely speculative. Hobbs at times makes passing reference to various documents and statements by witnesses but he did not fulfill his responsibility of providing these materials to the Court.

**Facts**

Unless otherwise noted, the following facts are undisputed or deemed admitted due to a party's noncompliance with Local Rule 56.1. Hobbs is an African-American male who has been employed by the U.S. Postal Service since 1982. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 11:8-12:24, Nov. 25, 2008). Hobbs works at the Bulk Mail Center in Forest Park, Illinois. (Def.'s LR 56.1(a)(3) Stmt. ¶ 1.) Wayne Johnson is a Caucasian male and is Hobbs' supervisor at the Bulk Mail Center. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 13:3-11.) Johnson considers Hobbs an excellent worker, and Hobbs maintains a high rate of work attendance. (*Id.*, Ex. 1, Hobbs Dep. 20:9-19; *id.*, Ex. 5, Johnson Aff. ¶ 16, May 3, 2007). Johnson was first made aware of Hobbs' EEO proceedings by an e-mail he received on January 12, 2007. (*Id.*, Ex. 5, Johnson Aff. ¶ 16.) Albert Bonk and Michael Damon are Caucasian males who work for the Postal Service alongside Hobbs

and are supervised by Johnson at the Bulk Mail Center. (*Id.*, Ex. 1, Hobbs Dep. 35:7-15.) Greg Terkovitz is a Caucasian male who works for the Postal Service at the Bulk Mail Center but is supervised by someone other than Johnson. (*Id.* at 35:9-36:6.)

On November 15, 16 and 17, 2006, Hobbs was absent from his job at the Chicago Bulk Mail Center. (*Id.* at 20:1-5.) Johnson told Hobbs that he would be required to provide medical documentation of his absences in order to be approved for paid sick leave. (*Id.* at 26:21-24.) Johnson required Hobbs' Caucasian co-workers to submit medical documentation in order to obtain sick leave. (*Id.*, Ex. 5, Johnson Aff. ¶¶ 4, 10 and 11.) Hobbs did not provide medical documentation in connection with his November 15-17, 2006 absences but submitted a note from his wife about his illness to Johnson. (*Id.*, Ex. 1, Hobbs Dep. 30:1-15.) Johnson did not accept Hobbs' wife's letter as medical documentation, denied Hobbs' sick leave request and instead granted him paid annual leave for his absences. (Def.'s LR 56.1(a)(3) Stmt. ¶ 5.) Hobbs objected to this classification of his absences, and on November 28, 2006, Hobbs requested a meeting with an EEO dispute resolution specialist. (Def.'s LR 56.1(a)(3) Stmt., Ex. 4, EEO Pre-Compl. Form, 1.) Hobbs indicated to Johnson that if he could not get his missed time counted as paid sick leave, he would prefer to be given leave without pay instead of paid annual leave. (Def.'s LR 56.1(a)(3) Stmt. ¶ 6.) Accordingly, on December 2, 2006, Johnson signed a pay adjustment form regarding Hobbs' November 15-17, 2006 absences that requested a change from paid annual leave to leave without pay. (*Id.*)

In an effort to have his absences classified as paid sick leave, Hobbs filed a grievance with the Postal Workers' Union stating that his supervisor Johnson had counted his time as paid annual leave instead of paid sick leave. (*Id.*) On December 7, 2006, the grievance was settled, and Hobbs' absences on November 15-17, 2006 were changed from paid annual leave to paid sick leave. (*Id.* ¶

3

7.)

On December 11, 2006, Hobbs filed an EEO pre-complaint counseling form claiming that he had been discriminated against on the basis of race when Johnson asked for medical documentation to substantiate his November 15-17, 2006 absences and subsequently denied his request for sick leave. (*Id.* ¶ 9.) On December 20, 2006, Johnson held a pre-disciplinary hearing with Hobbs in order to determine if he had provided false documents in his initial union grievance regarding his November 15-17, 2006 absences. (*Id.* ¶ 10.) This pre-disciplinary hearing was for the purpose of discovery only and no charge of fraud was ever made against Hobbs and no notice of removal was provided. (Def.'s LR 56.1(a)(3) Stmt., Ex. 5, Johnson Aff. ¶ 16.)

Hobbs contends that in December 2006, he was prevented from taking a full week of vacation because three of his paid annual leave days were initially used to cover his work absences on November 15-17, 2006. (*Id.*, Ex. 1, Hobbs Dep. 66:4-11; Pl.'s LR56.1(b)(3)(B) Stmt. ¶ 3.) Defendant argues that Hobbs was able to take a vacation in December 2006, but the cited portion of the record does not support that Hobbs was able to take his full vacation. (Def.'s LR 56.1(a)(3) Stmt. ¶ 12.) The issue regarding defendant's categorizing these absences as annual leave was resolved in January 2007 when Hobbs' paid sick leave was officially granted and he was credited with three annual leave days. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 25:20-25.)

In late January 2007, Hobbs received a "Letter of Demand" from the payroll department of the U.S. Postal Service asking to be reimbursed for overpaid wages. (Def.'s LR 56.1(a)(3) Stmt. ¶ 11.) This letter of demand was not signed by Johnson, no payments of any kind were ever collected from Hobbs by the Postal Service and the letter of demand was rescinded by the payroll department within twenty-four hours of its issuance. (*Id.*) In response to this letter of demand, on March 1, 2007, Hobbs filed a formal EEO complaint alleging racial discrimination against the Postal Service.

(Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 54:5-55:21.)

**Discussion**

Granting summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view the facts in a light most favorable to the non-movant while "drawing all reasonable inferences in her favor." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). The nonmovant must "set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

**I. Race, Color and National Origin Discrimination**

Title VII states that it is unlawful for "an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may utilize the direct or indirect method to prevail on a claim of discrimination against his/her employer. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 646 (7th Cir. 2005).

Without any direct evidence of his employer's discriminatory intent, plaintiff in the instant case must utilize the indirect burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order for a plaintiff to establish a *prima facie* case of discrimination

against his employer under the *McDonnell Douglas* method, he must show that: (1) he is a member of a protected class; (2) he reasonably met his employer's expectations in relation to his job performance; (3) he suffered an adverse employment action and (4) his employer treated similarly situated employees outside of his protected class more favorably. *McDonnell*, 411 U.S. at 802. If a plaintiff cannot create a genuine issue of material fact as to any one of the elements needed to establish a *prima facie* case of discrimination, then summary judgment must be granted in the defendant's favor. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Defendant does not argue that Hobbs has not satisfied the first and second elements of his *prima facie* case of discrimination. Accordingly, the Court need only address whether Hobbs has created a genuine issue of material fact regarding the third and fourth elements of the *prima facie* case.

### A. Adverse Employment Action

An adverse employment action must result in tangible job consequences for the employee. *De la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). Further, an adverse employment action is an act that materially alters the terms and conditions of an employee's employment. *Whittaker*, 424 F.3d at 648. An adverse employment action constitutes a significant change in an employee's job status such as hiring, discharge, denial of promotion, reassignment or substantial change in benefits. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Although adverse employment actions can be defined broadly, mere temporary inconveniences related to an employee's job are not materially harmful and do not rise to the level of what is considered adverse employment actions. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).

In the instant case, Hobbs contends that he was subjected to an adverse employment action when his supervisor required him to provide medical documentation to substantiate absences and refused to grant him paid sick leave when plaintiff did not provide such documentation. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 2.) Hobbs also argues that as a result of the refusal of sick leave, his supervisor required him to take annual leave. (Def.'s LR 56.1(a)(3) Stmt. ¶ 5.) This caused plaintiff to lose three of his vacation days in December 2006. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 66:4-11.) Hobbs further opines that being subjected to a pre-disciplinary hearing on December 20, 2006 and receiving a letter of demand from the post office in late January 2007 were adverse employment actions. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 2.)

Defendant relies on *Longstreet v. Illinois Department of Corrections*, 276 F.3d 379 (7th Cir. 2002), in support of its argument that an employer's requiring documentation to substantiate sick leave is not an adverse employment action. (Mem. Supp. Def.'s Mot. Summ. J. 5.) In *Longstreet*, plaintiff was a corrections officer who claimed that she was subjected to an adverse employment action when she was required to substantiate that her absences from work were illness-related. 276 F.3d at 384. The Seventh Circuit Court of Appeals held that being required to substantiate that an absence from work was illness-related did not result in a tangible job consequence and therefore was not an adverse employment action under Title VII. *Id.*

In the instant case, Hobbs was told by his supervisor that he was required to provide medical documentation to substantiate his absences if he wanted to be approved for sick leave. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 26:21-24.) This is nearly identical to the situation in *Longstreet*. Being required to prove that his absences from work were illness-related did not have a significant impact on Hobbs' job status. Further, such a requirement did not materially alter the terms and conditions of his employment. As such, being required to provide medical

documentation to substantiate work absences does not rise to the level of an adverse employment action.

Next, defendant relies on *Griffin v. Potter*, 356 F.3d 824 (7th Cir. 2004), in support of its argument that lost vacation time is not an adverse employment action. In *Griffin*, a postal employee claimed that she was subjected to an adverse employment action when her preferred schedule for annual leave was denied by her supervisor. 356 F.3d at 829. The Seventh Circuit Court of Appeals held that an employer's mere denial of a preferred vacation schedule did not significantly alter the terms and conditions of plaintiff's employment and was not an adverse employment action. *Id.*

Although Hobbs' situation is slightly different than that in *Griffin*, the holding of *Griffin* still applies. Although three of Hobbs' vacation days were taken away in December 2006,[1] it is undisputed that he was credited these vacation days in late January 2007. (Def.'s Local Rule 56.1 Stat. Mat. Facts, Ex. 1, Hobbs Dep. 25:20-25.) Accordingly, the loss of taking his preferred vacation days was merely a case of inconvenient. As such, Hobbs has not created a material issue of fact as to whether he suffered an adverse employment action with regard to his lost vacation days.

With regard to Hobbs' claims about the pre-disciplinary hearing, this event had no significant effect on his job status, the terms and conditions of his employment were not materially altered, and he suffered no tangible job consequences because of it. The hearing was for discovery relating to fraud, but no charges of fraud were ever lodged against Hobbs and he was not subject to any reprimands or notices of removal at any time. (Def.'s LR 56.1(a)(3) Stmt. ¶ 10.) Even if this hearing had resulted in a negative job evaluation or a reprimand, these would not rise to the level of adverse employment actions. *See Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001) (negative performance evaluations and unfair reprimands do not significantly alter the terms and conditions

---
[1]

of employment and are therefore not adverse employment actions).

Similarly, the letter of demand that Hobbs received from the Postal Service's accounting department did not materially alter the terms and conditions of his employment and caused no tangible job consequences to him. The letter of demand was merely a short inconvenience to Hobbs as evidenced by the fact that it was rescinded by the Postal Service within twenty-four hours of its issuance and no payments were ever collected from Hobbs at any point. (Def.'s LR 56.1(a)(3) Stmt. ¶ 11.)

In sum, Hobbs has failed to raise a genuine issue of material fact as to whether defendant's conduct about which he complains constitutes adverse employment actions. However, even if he had established this prong of his *prima facie* case, as discussed below, his claims fail for other reasons.

**B.  Similarly Situated Employees Outside of Protected Class Treated More Favorably**

In order to identify co-workers that are similarly situated, an employee must show that workers are in positions directly comparable to his own in all material aspects. *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008). Factors for comparison include reporting to the same supervisor, having similar responsibilities, being subject to the same standards and having the same amount of qualifications and experience. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). In the instant case, Hobbs identifies Albert Bonk, Mike Damon and Greg Terkovitz as Caucasian workers who were treated more favorably than he was. (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 35:7-36:6.) Terkovitz cannot be considered a similarly situated employee because he had a different supervisor than Hobbs while employed by the Postal Service. (*Id.*) As for Bonk and Damon, although they worked in the same department and had the same supervisor as Hobbs, there

is no evidence that they were treated more favorably.  As previously mentioned, the record is devoid of support for Hobbs' denials of defendant's fact statements in this regard.  Absent a showing of personal knowledge, an individual's conclusion that certain employees were treated more favorably than others must be disregarded.  *Abioye v. Sunstrand Corp.*, 164 F.3d 364, 367 (7th Cir. 1998).  Conjecture and speculation cannot be used to defeat summary judgment.  *Id.*  Hobbs simply makes blanket statements that Bonk and Damon were granted twenty-four hours of paid sick leave on request without providing medical documentation.  These hearsay statements are not based on plaintiff's personal knowledge and are purely speculative.  For example, in his deposition, Hobbs says "when [Michael Damon] did call in [for sick leave] it was granted.  And I assure you he did not have to bring a note."  (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 38:1-4.)  However, he does not offer any documentation or other evidence in support.  Hobbs also relies on speculation as support for a similar assertion when he states:  "I think somewhere along the way I think I asked for any sick leave notes, and I don't think I recall getting any back."  (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 40:15-20.)  Hobbs does not have personal knowledge of the situations involving these workers' sick leave and he provides no documentation to support his assertions.

Further, Hobbs makes no effort to identify similarly situated employees outside of his protected class that were not subject to lost vacation time, pre-disciplinary hearings, or letters of demand.  Hobbs makes no mention of such workers and he fails to refer to either his own personal knowledge or declarations from witnesses indicating the existence of any similarly situated workers.  As such, plaintiff fails to raise an issue of material fact with regard to any similarly situated employees outside of his protected class that were treated more favorably by the U.S. Postal Service.  Therefore, Hobbs cannot successfully oppose the motion for summary judgment on the Title VII discrimination claims and defendant must prevail.

**II. Retaliation**

Title VII also makes it unlawful for an employer to retaliate against an employee who has complained of discrimination or other activity that itself violates Title VII. 42 U.S.C. § 2000e-3(a). Similar to Title VII discrimination claims, retaliation claims under Title VII can be established using either the direct method or the indirect burden-shifting method. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Under the direct method, a plaintiff must present direct evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action and (3) there is causal connection between the engaging in activity and being subjected to an adverse employment action. *Luckie*, 389 F.3d at 714. Because Hobbs does not present any direct evidence of a causal connection and can only show a temporal proximity (which alone is never enough to create an issue of material fact as held by the Seventh Circuit in *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)), he must attempt to establish a case of retaliation through the indirect burden-shifting method.[2] Under the indirect method, a plaintiff must establish a *prima facie* case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he was performing his job according to his employer's reasonable expectations; (3) he suffered an adverse employment action and (4) similarly situated employees who did not engage in statutorily protected activity were treated more favorably. *Luckie*, 389 F.3d at 714. If a plaintiff cannot create a genuine issue of material fact as to any one of the elements needed to establish a *prima facie* case of retaliation, then summary judgment must be granted in the defendant's favor. *Stone v. City of Indianapolis. Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

---

[2] Defendant has argued that Hobbs has attempted to establish a retaliation claim under the indirect method, and plaintiff does not contend otherwise.

11

Defendant does not argue that Hobbs fails to satisfy the second element of his *prima facie* case of retaliation. Accordingly, the Court need only address whether Hobbs has created a genuine issue of material fact regarding the first, third and fourth elements of the *prima facie* case.

**A. Statutorily Protected Activity and Adverse Employment Action**

Title VII protects an employee from an employer's retaliatory action against that employee when he has complained of discrimination or other activity that itself violates Title VII. 42 U.S.C. § 2000e-3(a). Activity such as making a charge of unlawful actions under Title VII, or participating in an investigation, proceeding or hearing regarding activity made unlawful by Title VII are statutorily protected by Title VII. *Id.* The retaliation provision of Title VII was designed to protect the good faith efforts of employees to protest discrimination they reasonably believe they have suffered. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). Opposing or complaining about discrimination through actions such as filing a grievance with an employer or a complaint with the EEOC may constitute statutorily protected activity under Title VII but only if it indicates that the discrimination occurred because of membership in some sort of protected class. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). A threshold issue is that the protected activity must occur prior to any adverse employment action and as such an employer's awareness that an employee engaged in statutorily protected activity is implicit in the first element of the indirect method of establishing a claim of retaliation. *Durkin v. City of Chi.*, 341 F.3d 606, 614 (7th Cir. 2003). Proof of retaliation under the indirect method presupposes that the decision-maker knew that plaintiff engaged in statutorily protected activity. *Tomanovich*, 457 F.3d at 668-69.

In the instant case, Hobbs filed a grievance with his employer in early December 2006

regarding his sick leave absences but there is no indication that this particular grievance made any mention of discrimination. (Def.'s LR 56.1(a)(3) Stmt. ¶ 6.) Plaintiff requested a meeting with an EEO dispute resolution specialist on November 28, 2006 and on December 11, 2006 he filed an EEO pre-complaint counseling form in which he alleged that he was discriminated against because of his race. (*Id.* ¶¶ 8, 9.) On March 1, 2007 plaintiff filed his official EEO complaint of racial discrimination. (*Id.* ¶ 13.)

However, it is undisputed that Hobbs' supervisor did not become aware of his involvement in statutorily protected activity until January 12, 2007. (Def.'s LR 56.1(a)(3) Stmt., Ex. 5, Johnson Aff. ¶ 16.) Any assertions to the contrary by Hobbs would be speculative and unsubstantiated by any personal knowledge, documentation or statements from witnesses. Given that Hobbs' supervisor did not become aware of Hobbs' involvement in EEO proceedings until January 12, 2007, no reasonable jury could find that Hobbs' temporary loss of vacation days in December and the December 20, 2006 pre-disciplinary hearing were retaliatory. However, Hobbs received the letter of demand from the Postal Service in late January 2007. (Def.'s LR 56.1(a)(3) Stmt. ¶ 11.) Because Hobbs received this letter after his supervisor was aware of Hobbs' EEO proceedings, Hobbs has established a triable issue of material fact regarding whether he engaged in statutorily protected activity in relation to this letter of demand. However, as discussed above, because the letter of demand did not materially alter the terms and conditions of his employment and was rescinded by the Postal Service within twenty-four hours of its issuance, the letter of demand does not constitute an adverse employment action for the purposes of his retaliation claim. (*Id.*)

### B. Whether Similarly Situated Employees Who Did Not Engage in Statutorily Protected Activity Were Treated More Favorably

In order to identify co-workers that are similarly situated, an employee must show that these

13

workers are directly comparable to him in all material respects. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531-32 (7th Cir. 2003). Plaintiff is required to show that after engaging in the statutorily protected activity that caused the retaliation, only he, and not any similarly situated worker who did not engage in such activity was subjected to the adverse employment actions about which he complains. *Tomanovich*, 457 F.3d at 667.

In the instant case, Hobbs simply does not identify similarly situated employees who did not engage in statutorily protected activity that were not subject to lost vacation time, pre-disciplinary hearings, or letters of demand. He neglects to identify any fellow postal workers who did not participate in any EEO activity. Although Hobbs names a few individuals who he speculates were treated more favorably with respect to his discrimination claim (involving sick leave without medical documentation) (Def.'s LR 56.1(a)(3) Stmt., Ex. 1, Hobbs Dep. 35:7-36:6.), he fails to name any postal workers who were treated more favorably with regard to his retaliation claim. There is no evidence whatsoever that any employee of the Postal Service who did not engage in statutorily protected activity was treated more favorably than Hobbs, and therefore he fails to raise an issue of material fact with regard to the fourth element of his *prima facie* case of retaliation under the indirect method. As such, plaintiff cannot survive summary judgment on his retaliation claim, and defendant must prevail.

## **Conclusion**

For the reasons set forth above, the Court grants the defendant's motion for summary judgment [doc. no. 14]. This case is hereby terminated.

Dated: August 27, 2009

**SO ORDERED**　　　　　　　　　　**ENTER:**

_____
　　**RONALD A. GUZMAN**
　　　**District Judge**